UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                              Case No. 05-10341-DHW
                                                   Chapter 7
LEON THOMAS MOTHERSHED,

    Debtor.
_____

LEON THOMAS MOTHERSHED,

    Plaintiff,

v.                                                 Adv. Proc. No. 05-01039-DHW

UNITED STATES DEPARTMENT
OF EDUCATION,

    Defendant.

## MEMORANDUM OPINION

Leon Thomas Mothershed filed a complaint under 11 U.S.C. § 523(a)(8) to determine the dischargeability of his student loan debt to the United States Department of Education ("USDE").

Trial was held on January 12, 2006. Mothershed was represented by Benton H. Persons, and USDE was represented by Patricia A. Conover.

### Jurisdiction

The sources of the court's jurisdiction in this adversary proceeding are 28 U.S.C. § 1334 and the United States District Court for this district's general order of reference of title 11 matters to this

court. Further, because an action to determine the dischargeability of a particular debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I), this court's jurisdiction is extended to the entry of a final order or judgment.

## Findings of Fact

Mothershed is 46 years old. He is single, has no dependents, and lives alone. Mothershed dropped out of high school at age 16. Later, he joined the National Guard, where he completed his GED.

In the late 1980s Mothershed attended a technical college in Oklahoma where he earned a degree to work as an x-ray technician. He attended school less than a year.

He financed this study through the student loans which are the subject of this adversary proceeding. As of May 18, 2005, the consolidated, unpaid balance of the student loans was $10,654.93. The loan agreements required Mothershed to repay the debt over a period of not more than 10 years from either his graduation or his failure to enroll. The repayment period commenced in 1989.

Mothershed was unable to find work as an x-ray technician in Oklahoma, and he returned to Alabama. He has not sought work as an x-ray technician in Alabama. Instead, he has worked as a laborer, a shrimper, and a truck driver.

In the early 1990s, Mothershed's income was in the $7,000 to $8,000 range. The highest hourly wage earned by Mothershed in the early 1990s was $8.00. Some years he did not work at all.

When Mothershed filed for chapter 7 bankruptcy relief on February 17, 2005, he was employed by the Alabama Farmers Cooperative in Andalusia as a warehouse laborer, spreader, and truck

driver.[1] USDE garnished $166.96 each month from his wages, and his take-home pay averaged $794. His monthly expenses averaged $791. Hence, Mothershed was able to meet his expenses, albeit with only a meager surplus, while paying USDE $166.96 per month.

Since filing for bankruptcy relief, significant changes have taken place in Mothershed's life. First, he left his job with the Farmers Cooperative.[2] Mothershed is leaving Alabama on Monday, January 16, 2006 to begin work with a new employer, C.R. Pate Logging. Through C.R. Pate Logging, Mothershed will work in the Hurricane Katrina clean-up efforts within the State of Mississippi. He will earn a $100 per day salary plus room and board. Mothershed is unsure how long this job will last.

Beyond the change in his employment, Mothershed has, since filing the bankruptcy case, made changes in his personal life as well. He is no longer living with his girlfriend, Nancy Spurlin, with whom he cohabited and shared living expenses. Instead, he is living alone in a rented duplex.

As of the date of trial, Mothershed's monthly expenses total $908.[3] These expenses, however, will be lowered once he begins work for C.R. Pate Logging, which will pay his room and board. In addition,

---

[1] In both 2003 and 2004 Mothershed earned approximately $17,500 through his job at the Coop. When he left the Coop he was earning $8.50 per hour and working a 40-hour week.

[2] Mothershed's leaving his job at the Coop was not entirely volitional. He testified that he had been threatened by another employee and was fearful for his personal safety.

[3] Plaintiff's Exhibit G sets out Mothershed's monthly expenses as of the date of trial. They are itemized as follows: $250 rent, $150 utilities, $29 cable tv, $250 food, $150 transportation, $29 car insurance, and $50 medical and dental.

3

Mothershed testified that his expenses had actually gone down by $50 to $100 per month since he broke up with Spurlin due to the elimination of demands made upon him by Spurlin and her family.

Mothershed has never made voluntary payments toward his student loan obligation. He contends that since graduation from technical college, his income has been too low to permit any payment to USDE. For a number of years, however, USDE has seized his income tax refunds for application to the student loan debts. In addition, USDE began garnish his wages at the Coop in 2002.

## Conclusions of Law

The controlling Bankruptcy Code provision, 11 U.S.C. § 523(a)(8) provides:

> (a) A discharge under section 727. . . of this title does not discharge an individual debtor from any debt—
>
> > (8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless exception such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

In an action under § 523(a)(8), there is a shifting burden of proof. A creditor has the burden of proving "(1) the existence of a debt; (2) for an educational loan; (3) made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non profit institution." *White v. United*

4

Case 05-01039    Doc 16    Filed 01/20/06    Entered 01/20/06 11:26:18    Desc Main
Document      Page 4 of 6

*States (In re White)*, 243 B.R. 498, 505 (Bankr. N.D. Ala. 1999). Once this initial burden is met, the burden shifts to the debtor to prove that excepting the debt from discharge will impose an undue hardship. *D'Ettore v. Devry Institute of Technology (In re D'Ettore)*, 106 B.R. 715, 718 (Bankr. M.D. Fla. 1989).

Mothershed stipulates that the instant loans are of the type described in 11 U.S.C. § 523(a)(8). Therefore, the only issue for the court to determine is whether the debtor has met his burden of proof with respect to the "undue hardship" exception.

The phrase "undue hardship" is not defined by the statute. In *Hemar Insurance Corporation of America v. Cox (In re Cox)*, 338 F.3d 1238, 1241 (11th Cir. 2003) the Court of Appeals for this circuit recently adopted the three-part "undue hardship" test first enunciated by the Second Circuit in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2nd Cir. 1987).

Under *Brunner*, the debtor must prove (1) that he cannot repay the loans and maintain, based on current income and expenses, a minimal standard of living for himself and his dependants; (2) "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans." *Brunner*, 831 F.2d at 396.

Mothershed has not proven by a preponderance of the evidence that he cannot repay the loans and maintain a minimal living standard. Although his finances were constrained in the months preceding bankruptcy, Mothershed paid the USDE $166 per month through garnishment and still showed a small budget surplus at filing.

Mothershed is in a better position today to repay his student loan debt than he was when he filed for bankruptcy relief. He is earning a salary of $100 per day contrasted with $68 per day at the time of

5

bankruptcy.  Further, while he no longer shares living expenses with another, neither does he make contributions to Spurlin or her household.  Finally, Mothershed's new employer will supply him with room and board.  As a result, expenses allocated for food, rent, and utilities will be positively affected.

All in all, the evidence shows that Mothershed had the ability to repay his student loan debts at the time of bankruptcy.  Changes in his circumstances since bankruptcy make that result all the more likely.[4]

Without question, it will be hard for Mothershed to repay the student loan obligations.  His budget seems bare-boned and conservative.  Yet, difficulty of repayment is not enough to discharge a student loan under § 523(a)(8).  The hardship must be undue.  *United Student Aid Funds, Inc. v. Nascimento (In re Nascimento)*, 241 B.R. 440, 445 (B.A.P. 9th Cir. 1999).  Mothershed has not satisfied the court that he cannot maintain a minimal standard of living if required to repay these debts.

## Conclusion

For the foregoing reasons the court holds that the student loan debts owed by the debtor to the United States Department of Education are due to be excepted from discharge.  Pursuant to Fed. R. Bankr. Proc. 9021, a judgment consistent with this opinion will enter separately.

Done this 19th day of January, 2006.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

---

[4] At the rate of $166 per month, the current balance on the student loans can be repaid in a little over five years.